**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**TABETHA J. HOFFER,**

      **Plaintiff,**

v.                                    **Civil Action 2:20-cv-4763
Judge Sarah D. Morrison
Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF
SOCIAL SECURITY,**

      **The Commissioner.**

## REPORT AND RECOMMENDATION

Plaintiff Tabetha J. Hoffer brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 16) and **AFFIRM** the Commissioner's decision.

**I.  BACKGROUND**

Plaintiff protectively filed her application for DIB on April 5, 2016, alleging that she was disabled beginning January 31, 2002. (Tr. 362–68). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held two hearings on February 19, 2019 and August 15, 2019. (Tr. 158–200, 134–49). On September 18, 2019, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 60–133). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on September 11, 2020 (Doc. 1), and the Commissioner filed the administrative record on February

4, 2021 (Doc. 11). Plaintiff filed her Statement of Errors on April 28, 2021 (Doc. 16) and the Commissioner filed an Opposition on June 14, 2021 (Doc. 18). Plaintiff did not file a reply. As the deadline for any such reply has passed, the matter is now ripe for review.

### A. Relevant Medical Evidence

Because Plaintiff attacks only the ALJ's treatment of her mental impairments, the Court focuses on the same. The ALJ summarized Plaintiff's medical records and symptoms related to her mental impairments:

> The evidence documents the clinical diagnoses of bipolar, depressive, anxiety, personality, and trauma- and stressor-related disorders from the alleged onset date of disability through the date last insured (Exhibits 3F/1 and 5, 4F/4 and 9, 5F/16, 6F/2, 31, and 41, and 8F/63). The evidence also documents the clinical diagnoses of neurocognitive and other anxiety and depressive disorders since the date first insured (Exhibits 12F/17, 14F/1 and 9, 28F/1, and 29F/22).
>
> The consultative psychologist opined that [Plaintiff] has moderate to marked limitations in understanding and memory (Exhibit 3F/7). The consultative psychologist opined [also] that [Plaintiff] has no to marked limitations in social interaction (Exhibit 3F/7).
>
> [Plaintiff] has moderate limitations in concentrating, persisting, or maintaining pace. More specifically, concentrating, persisting, or maintaining pace refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.
>
> [Plaintiff] endorsed the ability to do repetitive tasks, and denied problems following directions at work, at the July 2003 psychological consultative examination (Exhibit 3F/2). The [Plaintiff] presented as alert and oriented, with good eye contact and quality of associations, and no flight of ideas, perseveration, and poverty of speech, at that time (Exhibit 3F/3-4). The [Plaintiff] was fully able to understand directions, and she demonstrated good persistence at that time (Exhibit 3F/4). The [Plaintiff] presented as a good listener and able to answer questions at other times (Exhibits 5F/47 and 6F/28). The [Plaintiff] repeatedly presented as alert, awake, coherent, oriented, rational, and relevant, with average, goal directed, good, intact,

> linear, logical, and normal concentration, eye contact, memory, and thought form and processes (Exhibits 4F/1, 3-4, 6, 8-9, and 11-12, 5F/11 and 49-50, 6F/26, 28, 31, 40, and 48, 10F/16, and 20F/95, 296, 367-368, 372, 376-377, 387-388, and 638).
>
> [Plaintiff] repeatedly presented with appropriate, casual, and good appearance, dress, grooming, and hygiene (Exhibits 4F/4, 8-9, and 11, 5F/11 and 16, 6F/4, 12-13, 15-16, 19, 22, 26, 28, 31, 40, and 48, 8F/71, and 20F/95). The [Plaintiff] reported daily bathing, changing clothes, and dressing, at the July 2003 psychological consultative examination (Exhibit 3F/4). The [Plaintiff] regularly consumes and prepares meals, and performs household chores (Exhibit 3F/4). The [Plaintiff] reported renovating her home in December 2002 (Exhibit 5F/18). The [Plaintiff] reported caring for at least six children including activities such as playing (Exhibits 3F/4, 4F/4-5, and 6F/24 and 29-31). The [Plaintiff] drives to get to places she needs to go (Exhibit 3F/4). The [Plaintiff] reported regular exercise, including hiking and walking (Exhibits 3F/4 and 6F/24). The [Plaintiff] reports shopping in stores (Exhibit 3F/4). The [Plaintiff] is able to manage money, including making change (Exhibit 3F/4). The [Plaintiff] is able to keep a daily schedule, manage her medication, read newspapers, tell time, and write letters (Exhibit 3F/4). The [Plaintiff] is able to use telephones (Exhibit 6F/25, 27, and 34). The [Plaintiff] reported traveling from Ohio to Kentucky and back on one occasion (Exhibit 6F/6). The [Plaintiff] had work activity since the alleged onset date of disability in 2002 (Exhibits 1E/3, 3E/3, and 6E/1).
>
> The consultative psychologist opined that [Plaintiff] has moderate to extreme limitations in sustained concentration and persistence (Exhibit 3F/7). [Plaintiff] has moderate limitations in adapting or managing oneself. More specifically, adapting or managing oneself refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions.

(Tr. 68, 83–85)

> [Plaintiff] alleges symptoms such as agitation, anger, anxiety, crying spells, depression, fidgetiness, irritability, isolative behavior, low energy and motivation, melancholy, memory and stress tolerance problems, mood swings, panic attacks, poor concentration, racing thoughts, sleep disturbance, social withdrawal, and variable energy, attributable to her mental impairments from the alleged onset date of disability through the date last insured (Exhibits 3F/1 and 3-4, 4F/2, 4-5, and 10, 5F/14-15, and 49, and 6F/9-10, 31, and 39). [Plaintiff] had impaired memory, delayed processing, and fair abstract thinking and ability to stay on task, at the July 2003 psychological consultative examination (Exhibit 3F/4). [Plaintiff] presented

3

> as circumstantial and delusional, with bizarre behavior, and blunted, flat affect, at times (Exhibits 5F/14, 16, and 47, and 6F/10-11). [Plaintiff] presented as disheveled on one occasion, and with fair or limited insight and judgment at different times (Exhibits 3F/3, 4F/4 and 12, 6F/31, and 10F/16). [Plaintiff] alleges symptoms such as anxiety, cognitive and memory problems, confusion, depression, distractibility, fatigue, feelings of guilt, irritability, lability, and moodiness, attributable to her mental impairments as of the date first insured (Exhibits 12F/3, 14F/4 and 6, 20F/1 and 56, 21F/17, 26F/18, and 29F/12). [Plaintiff] demonstrated dysphoria at times (Exhibits 13F/17 and 14F/6). The [Plaintiff] could not spell the word "world" backward, and accurately name the months in the year at times (Exhibit 12F/13 and 17). [Plaintiff] required redirection, and had average to borderline scores on standardized achievement testing, and low average to mildly deficient attention and information processing speed standardized test scores (Exhibit 14F/6-7).

(Tr. 93).

### B. The ALJ's Decision

The ALJ found that Plaintiff last met the insured status requirement through December 31, 2006, and meets the insured status requirements of the Social Security Act for entitlement to a period of benefits through September 30, 2019. (Tr. 67). Plaintiff had not engaged in substantial gainful employment during the periods from the alleged onset date of January 31, 2002, through the date last insured of December 31, 2006, and beginning on her date first insured of January 1, 2015. (*Id.*). The ALJ determined Plaintiff has the following severe combination of impairments: bipolar, depressive, anxiety, personality, and trauma- and stressor-related disorders. (Tr. 68). "Based on the objective medical evidence, [Plaintiff] has the following severe combination of impairments beginning on the date first insured: degenerative changes of the cervical spine, degenerative joint disease of the right foot, hip, and toes, arteriovenous malformation ("AVM") with embolization procedure and residual complex partial seizures, and neurocognitive, bipolar, depressive, anxiety, personality, and trauma- and stressor-related disorders." (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 79).

4

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> After careful consideration of the entire record, [the ALJ] find[s] that from the alleged onset date of disability through the date last insured, the [Plaintiff] had the residual functional capacity to perform work activity at all exertional levels without physical functional limitations and restrictions. Mentally, the [Plaintiff] retains the capacity to perform simple repetitive routine tasks involving only simple work-related decisions, and with few if any workplace changes, and no strict production quotas or fast paced work such as found on assembly lines. She is limited to no more than occasional interaction with co-workers, members of the general public, and supervisors. After careful consideration of the entire record, I find that beginning on the date first insured, the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Feeling, fingering, handling, and reaching with the right upper extremity, are each limited to no more than frequently. Climbing ramps and stairs, and operation of foot controls with the right lower extremity, are each limited to no more than occasionally. She cannot climb ladders, ropes, and scaffolds, and must avoid all exposure to workplace hazards such as unprotected heights and machinery. Mentally, the [Plaintiff] retains the capacity to perform simple repetitive routine tasks involving only simple work-related decisions, and with few if any workplace changes, and no strict production quotas or fast paced work such as found on assembly lines.

(Tr. 92).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not sufficiently supported by the medical evidence and other evidence in the record." (Tr. 94). In arriving at this conclusion, the ALJ found:

> [Plaintiff] repeatedly endorsed doing better and well, and stated that prescribed medication is effective in ameliorating her mental impairments and alleged symptoms, with improved depression, and controlled, stable mood (Exhibits 4F/1, 3, and 7, 5F/19-20, and 6F/9). The [Plaintiff] reported not being honest and open with a mental health treating source (Exhibit 6F/40), which would not be expected if her mental impairments and related symptoms are as severe as she purports from the alleged onset date of disability through the date last insured. The evidence documents non-compliance with prescribed counseling and medication (Exhibits 4F/9, 6F/6 and 44, and 10F/16), which also would not be expected if the [Plaintiff]'s mental impairments and related symptoms are as severe as she purports from the alleged onset date of disability through the date last insured. This evidence does not reasonably justify the imposition of additional or greater mental functional limitations and restrictions from the alleged onset date of disability through the date last insured.

5

> The record documents that the [Plaintiff]'s mental impairments and alleged symptoms are concurrent with Axis IV and other stressors from the alleged onset date of disability through the date last insured, including loss of custody of her children, homelessness, separation from her husband, and being a party to a lawsuit (Exhibits 3F/1 and 5, 4F/5-7 and 9, 5F/11 and 48, and 6F/11, 18, 23, and 39-40). In light of this evidence, the possibility that the [Plaintiff]'s alleged mental symptoms are solely attributable to or chronically exacerbated by acute and chronic situational stressors rather than her mental impairments cannot be discounted from the alleged onset date of disability through the date last insured. This evidence does not reasonably justify additional or greater mental functional limitations and restrictions from the alleged onset date of disability through the date last insured. Accordingly, there is no evidence of additional or greater mental functional limitations and restrictions from the alleged onset date of disability through the date last insured.
>
> There is no evidence of functional limitations and restrictions attributable to the [Plaintiff]'s mental impairments and related symptoms, which are stable, tolerable, and well controlled as of the date first insured. The [Plaintiff] repeatedly had normal mental status examinations and endorsed doing well, with improved, mild, no, and slight, anxiety and depression, and personal health questionnaire score of 0 (Exhibits 12F/17, 15F/2, 6, 10, and 14, 20F/64, 72, and 542, 26F/34 and 38, 27F/7, 31F/19, 35F/13-14, 35F/17, and 39F/3). The [Plaintiff] had standardized personality test scores consistent with over-reporting of cognitive symptoms (Exhibit 14F/8), which would not be expected if her mental impairments and related symptoms are as severe as she purports as of the date first insured. The evidence documents non-compliance with prescribed medication (Exhibit 14F/4), which also would not be expected if the [Plaintiff]'s mental impairments and related symptoms are as severe as she purports as of the date first insured. This evidence does not reasonably justify the imposition of additional or greater mental functional limitations and restrictions as of the date first insured. Accordingly, there is no evidence that the [Plaintiff] has additional or greater mental functional limitations and restrictions as of the date first insured.
>
> The record documents that the [Plaintiff]'s mental impairments and alleged symptoms are concurrent with situational stressors as of the date first insured, including her child's substance abuse problems (Exhibits 14F/4 and 27F/6). In light of this evidence, the possibility that the [Plaintiff]'s alleged mental symptoms are solely attributable to or chronically exacerbated by acute and chronic situational stressors rather than her mental impairments cannot be discounted as of the date first insured. This evidence does not reasonably justify additional or greater mental functional limitations and restrictions as of the date first insured. Accordingly, there is no evidence of additional or greater mental functional limitations and restrictions as of the date first insured.

(Tr. 95–96).

Relying on the VE's testimony, the ALJ concluded that Plaintiff was unable to perform her past relevant work as a school bus monitor, janitor or companion, but could perform jobs that exist in significant numbers in the national economy, such as a hand packer, packing and filing machine tender, or a machine feeder. (Tr. 121–23). So the ALJ concluded that Plaintiff was "not disabled [] from January 31, 2002, the alleged onset date of disability, through December 31, 2006, the date last insured, and beginning on January 1, 2015, the date first insured." (Tr. 125).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

In her sole assignment of error, Plaintiff argues that the ALJ "improperly discredited the

mental health opinions [of] consultative examiners Dr. Delbert and Dr. Wilcox," which resulted in an unsupported RFC. (Doc. 16 at 9). The Commissioner responds that the ALJ properly assessed these opinions, adopted some of the opined limitations, and "rejected the remainder . . . because they were inconsistent with and not supported by the record evidence." (Doc. 18). At base, the Commissioner argues that "[s]ubstantial evidence supports the ALJ's finding that Plaintiff was not disabled." (*Id*. at 9). The Undersigned agrees.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a claimant's residual functional capacity. *See* 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner"). And it is the ALJ who resolves conflicts in the medical evidence. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). In doing so, the ALJ will give each opinion the weight deemed appropriate based on factors such as whether the physician examined or treated the claimant, whether the opinion is supported by medical signs and laboratory findings, and whether the opinion is consistent with the entire record. 20 C.F.R. § 416.927(c). The ALJ may reject an opinion that is inconsistent with the record. 20 C.F.R. § 416.927(c)(4); *Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010).

Relevant here, "[t]he opinions of consultative examiners [are] not entitled to any particular weight and the ALJ [is] not under any special obligation to explain why [he] elected not to defer to those opinions." *Meyers v. Comm'r of Soc. Sec.*, No. 1:17-CV-706, 2018 WL 4266244 (W.D. Mich. Aug. 15, 2018), report and recommendation adopted, No. 1:17-CV-706, 2018 WL 4252452

8

(W.D. Mich. Sept. 6, 2018).  Nonetheless, here, the ALJ explained his rationale for discounting the opinions at issue.

On July 21, 2003, Drs. Delbert and Wilcox performed a psychological evaluation at the request of the Muskingum County Department of Job and Family Services.  (Tr. 509–16).  In evaluating the opinions of these two consultative examiners, the ALJ assigned them "little weight." (Tr. 115).  While the ALJ agreed with some of the limitations opined by Drs. Delbert and Wilcox (*see id*. (finding Plaintiff "has no more than moderate limitations in adapting or managing oneself" and has "demonstrated good and normal insight and judgment")), the ALJ ultimately found that the "remainder of these opinions [were] inconsistent with and unsupported by the totality of the evidence." (*Id*.).

The ALJ agreed with Drs. Delbert and Wilcox that Plaintiff had moderate limitations in adapting or managing herself.  (*See* Tr. 115 (citing Tr. 515 (opining that Plaintiff was, at most, moderately limited in her ability to "respond appropriately to changes in her work setting," "be aware of normal hazard and take appropriate precautions," and "to set realistic goals or make plans independently of others"))).  The ALJ found these pieces of the consultive examiners' opinion were consistent with evidence that Plaintiff cares for at least six children and has "demonstrated good and normal insight and judgment, interstate travel, and work activity." (*See* Tr. 82, 115 (citing Tr. 520 (showing Plaintiff regularly takes care of six kids); Tr. 593 (showing Plaintiff traveled from Ohio to Kentucky and back on at least one occasion); Tr. 401, 416, 437 (detailing Plaintiff's work activity since the alleged onset date of disability in 2002))).

The ALJ afforded the rest of Drs. Delbert's and Wilcox's opinion no weight as it was "inconsistent with and unsupported by the totality of the evidence." (Tr. 115).  Plaintiff takes issue with this characterization, arguing that "[t]he ALJ's limited view of the record when assessing

[Drs. Delbert and Wilcox]'s opinion combined with [his] improper reliance on the state agency psychologists' opinions raises significant doubt as to the credibility of [the] decision." (Doc. 16 at 15–16). Yet, upon review of the record evidence, the Undersigned finds that the ALJ's conclusion that the consultative examiners' opinion was inconsistent with and unsupported by the record, is not off the mark. Further, the ALJ's reliance on the opinions of the state agency psychologists was appropriate.

To begin, the ALJ found that Plaintiff is less limited in "understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace[,]" than Drs. Delbert and Wilcox found. (Tr. 115). Specifically, the ALJ relied upon the records showing Plaintiff "repeatedly endorsed doing better and well, and stated that prescribed medication is effective in ameliorating her mental impairments and alleged symptoms, with improved depression, and controlled, stable mood[.]" (*Id*. (citing Tr. 517, 519, 523, 548–49, 596) (noting Plaintiff was doing "very well presently on the medications which she is taking" and was "rational, relevant coherent and appropriate with no psychosis, organicity, or major depressive symptomatology and no danger potential"))). Given this inconsistency, it was appropriate for the ALJ to place little value on this portion of the consultative examiners' opinion. *See Gant*, 372 F. App'x at 585 (holding that an ALJ may reject any opinion that is inconsistent with the record).

The ALJ also found the limitations opined by Drs. Delbert and Wilcox to be inconsistent with the record given that Plaintiff "reported not being honest and open with a mental health treating source" and was "non-complian[t] with prescribed counseling and medication." (Tr. 115 (citing Tr. 525, 593, 627, 631, 764 (showing Plaintiff frequently missed counseling appointments and meetings with her case manager, failed to use prescribed medications, and at one point, would "not consider any medication"))). The ALJ further opined that such behavior "would not be

10

expected if [her] [] mental impairments and related symptoms are as severe as" opined by Drs. Delbert and Wilcox. (Tr. 115).

Before concluding Plaintiff's non-compliance with treatment weighed against her allegations of disability and the limitations opined by Drs. Delbert and Wilcox, however, the ALJ was required to "consider any reasons justifying such non-compliance." *Robinson o/b/o D.S.L.R. v. Comm'r of Soc. Sec.*, No. CV 18-11835, 2019 WL 1474024 (E.D. Mich. Mar. 18, 2019), report and recommendation adopted sub nom. *Robinson o/b/o D.L.S.R. v. Comm'r of Soc. Sec.*, No. 18-CV-11835, 2019 WL 1471464 (E.D. Mich. Apr. 3, 2019). The ALJ did exactly that. He expressly discussed the stressors in Plaintiff's life that impacted her mental health and non-compliance, including loss of custody of her children, homelessness, separation from her husband and other legal issues. (Tr. 115 (citing Tr. 509, 513, 521–23, 525, 540, 577, 598, 605, 610, 626–27)). Yet, as the Commissioner correctly notes, because the ALJ has "final responsibility for deciding whether an impairment results in work-related limitations," it was appropriate for the ALJ to conclude that "Drs. Delbert's and Wilcox's extreme limitations were inconsistent with and not supported by the totality of the evidence" even considering these other stressors. (Doc. 18 at 8 (citing Tr. 115)).

Additionally, the ALJ did not err in relying on the opinions of state agency reviewing psychologists. At base, "[t]he State Agency reviewing psychologists opined that insufficient objective medical evidence exists documenting any severe mental impairments or combination of severe mental impairments, and [Plaintiff] therefore has no mental functional limitations and restrictions[.]" (Tr. 117). The ALJ found these opinions consistent with and supported by the totality of the evidence and afforded them "significant weight." (*Id*.). Specifically, the ALJ adopted the state agency reviewing psychologists' opinion that Plaintiff "is less limited . . . in

11

understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace[.]" (*Id.* (citing Tr. 789, 810, 814, 818, 822, 1124, 1132 (showing plaintiff had "normal mental status examinations and endorsed doing well, with improved, mild, no, and slight, anxiety and depression"))). The Undersigned finds no error in the ALJ's assessment or use of the state agency psychologists' opinions. This is so because the ALJ considered the consistency and supportability factors and determined that the state agency psychologists' findings were consistent with and supported by the record. After a thorough review of the record, as detailed above, the Court finds that substantial evidence supports the ALJ's decision and ultimate RFC determination. *See Johns v. Colvin*, No. CIV.A. 13-252-DLB, 2014 WL 3965041 (E.D. Ky. Aug. 12, 2014) (finding "[t]he ALJ gave sufficient reasons for rejecting the opinions of [the] plaintiff's consultative examiners").

Ultimately, Plaintiff asks this Court to re-weigh the evidence relating to her impairments and decide the outcome of this case differently. This request is impermissible under the substantial evidence standard of review. The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Bradley*, 862 F.2d at 1228; *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Young v. Sec'y of Health and Human Servs.*, 787 F. 2d 1064, 1066 (6th Cir. 1986). Accordingly, because the ALJ's RFC determination is supported by substantial evidence, as was his decision to discredit the opinions of consultative examiners Dr. Delbert and Dr. Wilcox, Plaintiff's assignment of error has no merit.

IV.     **CONCLUSION**

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 16) and **AFFIRM** the Commissioner's decision.

### V.     PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: August 20, 2021               /s/ Kimberly A. Jolson
                                    KIMBERLY A. JOLSON
                                    UNITED STATES MAGISTRATE JUDGE